**STATE**

v.

**Richard GOMES.**

**No. 90–413–C.A.**

Supreme Court of Rhode Island.

March 13, 1992.

James E. O'Neil, Atty. Gen., Annie Goldberg, Special Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the defendant's appeal from a judgment of conviction in Superior Court on a charge of assault with intent to murder and possession of a firearm by one previously convicted of a crime. We affirm.

On the evening of March 16, 1985, Arthur MacRae, Frank MacRae, Al Ortiz, and Danny Quinn met at Frank MacRae's house in the Silver Lake section of Providence. Around two in the morning of the seventeenth the foursome decided to go to the New York System in the Olneyville section of Providence to get some hot weiners and cigarettes. They all got into Arthur MacRae's Dodge Colt and made the five- to ten-minute drive to the New York System. Arthur MacRae drove and Al Ortiz sat in the front passenger seat. Frank MacRae sat in the back seat on the passenger side, and Danny Quinn sat in the back seat on the driver's side.

Arthur MacRae parked his car in front of the New York System. The area was well illuminated by the lights from the restaurant and from flood lights at the gas station across the street. Arthur remained in the car with his cousin Frank while Danny Quinn and Al Ortiz went into the restaurant to order hot weiners. About five minutes later, Al Ortiz came out of the restaurant and got back into the front passenger seat of the car and began eating his hot weiners.

At about the same time Louis Tiberio (Tiberio) arrived at the New York System accompanied by his friend Dale Schaeffer (Schaeffer). Tiberio parked close to the restaurant, and he and Schaeffer went into the restaurant to get some food. Tiberio left the restaurant first and stayed outside and stood at the corner of the restaurant building. He stood near an older, heavy-set man with a receding hairline who was wearing a brown waist-length jacket. When Schaeffer exited the restaurant, the two men got into Tiberio's car to eat their food. Moments later the following occurred.

The older, heavy-set man approached Arthur MacRae's car. This man went to the back window on the passenger side, where Frank MacRae was still seated, and drew a gun. The man pointed the gun at Frank MacRae's face and asked if he had a problem and what he was looking at. Frank MacRae responded that he had no problem and that he was just looking out the window. The gunman then pointed the gun at the back of Al Ortiz's head and asked him the same question. Al Ortiz gave the same answer as Frank MacRae. Next the gunman put the gun into his pants and went back to the takeout window at the New York System.

A few moments later Danny Quinn came out of the restaurant. Frank MacRae yelled to him to "watch out because the man at the take-out window has a gun." Danny Quinn ran to the side of the car. At that moment the gunman approached the car and began firing shots at the men in the car. Al Ortiz attempted to get out of the line of fire by climbing into the back seat. He got stuck, however, between the bucket seats and was hit by four shots in the right leg, left leg, back, and stomach. Two of the shots hit Arthur MacRae in the left leg. The gunman then put the gun back into his pants and ran down the street and around the corner. Tiberio, who heard the gun shots, saw the man run away. Danny Quinn chased the gunman, but as he rounded the corner another man grabbed him and told him to stop the chase. He was, however, able to see the gunman get into a car and drive away.

Al Ortiz was transported by ambulance to St. Joseph Hospital, where he remained for over six weeks to receive treatment for his wounds. After being shot Arthur MacRae opened the driver's door and fell out of the car. He went across the street to the gas station to seek assistance. No one was there, but he was able to flag down a van that took him to Roger Williams Hospital. Arthur remained in the hospital for eleven days under treatment.

About five weeks later Providence police arrested a man named James Chiellini (Chiellini) for breaking into and entering a food store on Atwells Avenue. Chiellini, who was on probation at the time of this arrest, faced up to thirteen years in prison if convicted of this charge. Providence police detective Steven Cross told Chiellini that he would not be charged with the breaking and entering if he could provide the police with useful information. Chiellini then told Cross that he had witnessed a shooting at the New York System in Olneyville. At that time Chiellini told Cross that the gunman was Richard Gomes. Moreover at trial Chiellini admitted that he was the one who had prevented Danny Quinn from pursuing the gunman immediately after the shooting.

Relying on this information, Providence police summoned Arthur MacRae, Frank MacRae, Al Ortiz, and Danny Quinn to the police station a few weeks after the shooting. Frank MacRae, Al Ortiz, and Danny Quinn were able to identify pictures of Richard Gomes as the man who shot at them in Olneyville on March 17, 1985. Furthermore, at another time Tiberio was able to identify pictures of Richard Gomes as the gunman. Based on this evidence the jury found defendant guilty of assault with the intent to commit murder and possession of a firearm by one previously convicted of a crime.

On this appeal defendant raises nine allegations of error by the trial justice. After considering the issues raised, we find no error and therefore affirm the judgment of conviction.

I

The first issue that defendant raises is that the trial justice erred by denying his motion to suppress the identifications given by the witnesses Tiberio, Frank MacRae, Danny Quinn, and Albert Ortiz. The defendant argues that denial of his motion to suppress was error because the identifications were inadmissible on three grounds. First, he argues that the identifications were the result of suggestive identification procedures and lacked independent reliability. Second, he submits that a variety of factors, including the witnesses' exposure to newspaper accounts and photos of defen-

dant, group discussions held among the witnesses concerning the identifications, and the inaccurate, contradictory, and changing description of the gunman by the witnesses all make the identifications inadmissible. Finally, defendant argues that the witnesses lacked personal knowledge of the matter, as required by Rule 602 of the Rhode Island Rules of Evidence.

We note that when reviewing the decision of the trial justice on a motion to suppress "the duty of the reviewing court is to view the evidence in the light most favorable to the government and apply the 'clearly erroneous' rule." *State v. Beaumier,* 480 A.2d 1367, 1375 (R.I.1984).

■ It is well settled that a two-part test is employed in determining whether an identification procedure has violated a defendant's due process rights. First, a court must consider whether the procedures used in the identification were unnecessarily suggestive. Second, if the procedures were suggestive, then a court must determine if the identification lacks independent reliability despite the suggestive nature of the identification procedure. *State v. Camirand,* 572 A.2d 290, 293 (R.I. 1990); *State v. Barnes,* 559 A.2d 136, 140 (R.I.1989); *State v. Nicoletti,* 471 A.2d 613, 615 (R.I.1984). To determine if the identification procedures are unnecessarily suggestive, we must "compare the physical characteristics of each individual featured in the display to the general description of the suspect given to the police by the victim." *Barnes,* 559 A.2d at 140. "The factors to be considered when determining if an identification is independently reliable include the opportunity of the witness to view the criminal, the witness's ˈdegree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Camirand,* 572 A.2d at 294 (citing *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977)).

Furthermore, in *State v. Pailon,* 590 A.2d 858 (R.I.1991), this court considered the effect suggestions made by private persons to the witness had on the reliability of the witness's identification. In *Pailon* a jewelry store was robbed by the defendant and an accomplice. The owner of the jewelry store had an opportunity to observe the robber but could not pick his picture out of a photo lineup. About four weeks later a man named Anderson went to the jewelry store and told the victim the name of the robbers. This man also showed the victim a picture of the defendant. After seeing this picture, the victim was instantly able to identify the defendant. Four months later the victim was asked to view a lineup by Newport police. The victim was able to identify the defendant as her assailant. At trial, the defendant objected to this identification, arguing that it was tainted as a result of the suggestions made by Anderson.

The *Pailon* court approved of the trial justice's finding that the victim's in-court identification of the defendant was reliable and independent of both the photograph presented by Anderson and the lineup by Newport police. *Id.* at 860. The court then further considered the effect of private action upon due-process requirements for identifications. The court noted that United States Supreme Court cases "prohibited the introduction of eyewitness-identification testimony that has been tainted by official pretrial procedures * * *." [1] *Id.* at 862. The purpose of this rule is to deter unconstitutional official procedures that will deny a defendant his or her due-process rights. On the other hand, when the offending conduct is made by a private person, the reason for having the exclusionary rule disappears. The *Pailon* court concluded that "absent state action, no constitutional violation that would give rise to the creation of an exclusionary rule has been committed." *Id.* at 863. The court recognized, however, that private individuals are not free to taint a witness's identification. The court stated that "the best guarantee of due process in such a situa-

---

1. *See Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v.* *Wade,* 388 U.S. 218, 87 S.Ct.1926, 18 L.Ed.2d 1149 (1967).

tion * * * would be the opportunity for cross-examination in order to expose a witness's lack of credibility." *Id.*

■ Applying these principles to the present case leads to the conclusion that the trial justice correctly denied defendant's motion to suppress the identifications. We note that all the witnesses described the gunman as an approximately five-foot, nine-inch tall, 180–pound male in his forties with an average build and a receding hairline. The trial justice determined that all the photos showed to the witnesses were pictures of white males in civilian clothes with receding hairlines or balding. Furthermore the trial justice found that all the individuals in the photos had dark eyes and that the height of the individual was not depicted in the picture. These findings by the trial justice indicate a solid foundation upon which she could determine that the identification procedures were not unnecessarily suggestive. Since we find that the identification procedures were not unnecessarily suggestive, there is no need to determine if the identification procedures are independently reliable.

■ Next, defendant's contention that the witnesses' exposure to newspaper accounts and photos of defendant necessitate the exclusion of the identification is not supported by the law. In *Pailon* this court determined that actions by private individuals concerning the identification of suspects is not subject to the exclusionary rule. Thus a motion to suppress the identification should not be granted on the basis of private actions such as a witness' exposure to newspaper articles or group discussions among witnesses. Defense counsel can test the influence of the actions of a private person on the witness identification by conducting a thorough cross-examination.

■ Finally, defendant's argument that the witnesses lacked personal knowledge of the incident, as required by Rule 602, is without merit. All the witnesses who identified defendant as the gunman personally observed him on the morning of March 17, 1985. Thus the personal knowledge requirement of the rule is met, and the witnesses' testimony was properly admitted.

## II

The second issue that defendant raises is whether the trial justice erred by denying defendant's motion to exclude Chiellini's testimony.

After being arrested for breaking and entering, Chiellini, who was already on probation, told a Providence police detective that he had witnessed the shooting in Olneyville and that the gunman was Richard Gomes. In exchange for this information Detective Cross promised to drop the pending charges against Chiellini and not to present him to Superior Court as a parole violator. At trial, defendant moved to exclude the testimony of Chiellini. Just prior to the motion Chiellini stated that he did not wish to testify and that if he did testify he would only say the gunman resembled Richard Gomes.

At trial the state called Chiellini as a witness. Once he was confronted with his witness statement, he admitted that he had identified Richard Gomes as the gunman. Nevertheless Chiellini claimed he made this identification without knowing Richard Gomes and that the police had coerced him into making the identification. At this point the prosecutor asked that Chiellini be declared a hostile witness and the trial justice, after questioning Chiellini, granted this request.

The defendant asserts that Chiellini's testimony should have been excluded because the prosecution knew such testimony was perjured—the impeachment of a state's witness by the prosecutor constitutes a violation of Rule 607 of the Rhode Island Rules of Evidence—and the testimony given by Chiellini was coerced.

■ The law is clear that a prosecutor cannot knowingly present perjured testimony. *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108 (1972). Furthermore, the prosecutor bears responsibility for correcting what he or she knows to be false and eliciting the truth. *Napue v. Illinois,* 360 U.S. 264, 269, 79

S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221 (1959).

In the present case the trial justice determined that the prosecutor did not know whether Chiellini was perjuring himself. We agree with this determination. Although Chiellini had offered many versions of his ability to identify the gunman, he had never expressed under oath which version was the truth. Thus the prosecution had no way to know if it was offering perjured testimony. The trial justice properly permitted the witness to offer testimony that could be evaluated by the jury. Moreover, the truth of the witness's statements could be tested on cross-examination.

Next defendant argues that the prosecution should not have been allowed to impeach Chiellini pursuant to Rule 607. That rule states:

"The credibility of a witness may be attacked by any party, including the party calling the witness, except that the party calling the witness shall not impeach the witness' credibility by evidence of bad character unless, in the view of the trial justice, the interests of justice so require."

In *State v. Vargas*, 420 A.2d 809 (R.I. 1980), this court determined "that a party who is surprised by his own witness's testimony may be permitted, in the discretion of the trial justice, to confront the witness with prior inconsistent statements. * * * The rule that a party may not ordinarily impeach his own witness may also be relaxed even in the absence of an allegation and finding of surprise when, in the view of the trial justice, the interests of justice so require." *Id.* at 812.

In the present case the prosecution was not completely surprised by Chiellini's testimony since his pretrial statements were inconsistent. The trial justice, however, was justified in finding that the interests of justice required that the prosecution be permitted to impeach its own witness. Chiellini was the first witness who placed defendant at the New York System on the morning of the shooting. Thus he was a material witness, and the interests of justice were best served by allowing his testimony to be evaluated by the jury.

Finally defendant argues that Chiellini's statements to police were coerced. This argument is without merit. Chiellini made the statement identifying Richard Gomes as the gunman pursuant to a plea-bargain agreement to which he voluntarily agreed. Chiellini promised to provide the identity of the gunman in exchange for the police officer's promise to not present him to the Superior Court as a parole violator. Chiellini was under no compulsion to accept this plea agreement. Thus there was no coercion.

## III

The third issue that defendant argues on appeal is that of whether the trial court erred in refusing to admit the expert testimony of Dr. Robert Buckhaut concerning the unreliability of eyewitness memory. Specifically defendant wanted the expert to present testimony to the jury establishing that a witness's memory tends to be less effective in stressful situations and that a witness's level of confidence in recalling an event does not correlate with successful recall. At trial the trial justice sustained the prosecutors objection to the testimony of this witness. She reasoned that the proposed expert testimony was not sufficiently connected to the issue of eyewitness identifications in the case and that Rule 403 of the Rhode Island Rules of Evidence would be violated if this expert testimony was admitted.

In *State v. Wheeler*, 496 A.2d 1382 (R.I. 1985), the court had the opportunity to comment on the introduction of novel scientific evidence. The *Wheeler* court noted that this jurisdiction is open to "developments in science that would tend to assist the trier of fact." *Id.* at 1388. When determining whether the proposed expert testimony is admissible, the trial justice must initially determine if the evidence sought to be introduced is relevant. *Id.* Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination

of the action more probable or less probable than it would be without the evidence." Rule 401. Of course, relevant evidence is admissible as long as it does not violate the restrictions of Rule 403. That rule states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ In the present case the identification of the gunman is the central issue. The expert testimony is being offered for the purpose of discrediting the identifications of defendant made by the witnesses. Thus this evidence is relevant because it tends to make the prosecutor's contention that the witnesses' identifications were correct less probable.

■ Next we must consider whether the evidence violates the evidentiary concerns of Rule 403. After careful consideration we are of the opinion that it does. We believe that in this case presentation of expert testimony concerning the unreliability of eyewitness identification would lead to confusion of the issues and mislead the jury. Numerous witnesses observed the gunman at the New York System on the morning of the shooting. Each of these witnesses observed the gunman from a different angle and under a different condition of stress. The expert's blanket assumptions concerning eyewitness identification under stressful situations would not be appropriate. Introduction of this evidence could only confuse or mislead the jury; therefore, the trial justice properly excluded the expert testimony.

### IV

Next defendant contends that the trial justice committed two errors when instructing the jury. First, defendant argues that error was committed when the trial justice failed to instruct the jury on the importance of the accuracy of a witness's prior

description of the suspect. Second, defendant claims that the trial justice erred by misleading the jury on the subject of unanimity. Both arguments are without merit.

■ When reviewing the instructions of a trial justice, we must examine the instructions in their entirety in order to determine the manner in which a jury of ordinarily intelligent lay persons would have understood the instructions as a whole. *State v. Lamoureux*, 573 A.2d 1176, 1179 (R.I.1990); *State v. Andrade*, 544 A.2d 1140, 1143 (R.I.1988).

■ The defendant relies on *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to support its contention that an instruction should have been given stating the importance of the accuracy of a witness's prior description of a suspect. In *Biggers* the United States Supreme Court stated that "the accuracy of the witness' prior description of the criminal" was one factor to consider when evaluating whether the identification was reliable.[2] *Id.* at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. Since the accuracy of the witness's prior description is but one factor, a general instruction concerning reliability of a witness is sufficient. We have previously stated that "a trial justice is not required to give specific instructions * * * so long as the charge of the trial justice adequately covers the subject matter relating to the request." *Andrade*, 544 A.2d at 1143. We find that the instructions given by the trial justice in this matter adequately cover the issue of the reliability of the identification and therefore are sufficient.

The defendant also alleges that the trial court erred in giving the following instruction:

"Members of the jury, your verdict, whatever it's going to be, whether it's a verdict of guilty or a verdict of not guilty, must be the verdict of all twelve of you, and that's not difficult to do."

Later on, the court further instructed:

"if you find unanimously, that is to say, all twelve of you, that the State has not

---

**2.** See *State v. Camirand,* 572 A.2d 290, 294 (R.I. 1990), for a complete list of factors used to

determine if an identification is independently reliable.

proved the case beyond a reasonable doubt, it will be your duty to find the defendant not guilty * * *. I say this equally strongly, if you find that the State has proved its case beyond a reasonable doubt, it will be your duty to find the defendant guilty."

■ The defendant argues that these two statements gave the jury the impression that twelve not-guilty votes were required for defendant to escape conviction. This impression, of course, is not supported by the law. The proper rule is that a jury can render a verdict only by a unanimity of opinion. If the jurors are not unanimous on the question of guilty or not guilty, the jury is in disagreement and cannot issue a verdict.

■ When the instructions of the trial justice are viewed in their entirety it is clear that the jury did not get the impression that twelve not-guilty votes were needed for defendant to escape conviction. The jury was merely told that in order to issue a verdict, the jury's decision must be unanimous. Nevertheless the jury was under no compulsion to be unanimous. In fact the trial justice had warned the jury "never [to] change your mind just to be in agreement with other people." Therefore, we find no error in the instructions that were given to the jury.

### V

■ The fifth issue that defendant presents concerns whether the trial justice correctly denied defendant's motion to produce witness statements. Prior to trial, defendant gave notice of his intention to call alibi witnesses. The prosecution interviewed two of these witnesses and took statements. Later defendant attempted to obtain by discovery a copy of these witness statements pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure. The trial justice denied this motion. The state did, however, offer to provide defendant with the witness statements after the alibi witness had completed direct examination at trial.

Rule 16(a)(6) states that upon the request of a defendant, the state must provide "a written list of the names and addresses of all persons whom the attorney for the State expects to call as witnesses at the trial in support of the State's direct case." Subsection (7) of Rule 16(a) asserts that the state must provide "as to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements * * * of such persons."

The defendant correctly argues that Rule 16 is one of the most liberal discovery mechanisms in the United States. *See State v. McParlin*, 422 A.2d 742, 745 (R.I. 1980). The rule "was designed to be broad in scope so that neither the defense nor the prosecution is surprised at trial." *State v. Powers*, 526 A.2d 489, 491 (R.I.1987). Despite the tendency to interpret this rule to permit discovery, in this case we determine that the trial justice properly excluded discovery of the requested material pursuant to Rule 16.

Rule 16(a)(6) provides that the state must provide information to the defendant about individuals the "[s]tate expects to call as witnesses at the trial." In the present case the state did not expect to call these alibi witnesses at trial. The alibi witness would be called by defense counsel. Thus, the clear language of the rule does not mandate discovery of the witness statements in this instance. We cannot conceive of any legitimate reason why defense counsel should be entitled to these statements. Certainly defense counsel should be aware of what its own witnesses will say in court. Also defense counsel is not entitled to these witness statements in order to discover whether the alibi witnesses have told the state the same story as they told defense counsel.

### VI

■ Next defendant raises on appeal the issue of whether the trial justice committed error when she restricted defendant's cross-examination of Arthur MacRae. At trial, defense counsel asked Ar-

thur MacRae during cross-examination and re-cross-examination, questions relating to the length of time he observed the assailant and concerning whether MacRae wanted to change previous testimony. The trial justice sustained the prosecutor's objection to these questions. The defendant asserts that the trial justice's decision on this matter is improper and denied defendant his Sixth Amendment right to confront and cross-examine his accuser.

At the outset we note that "[e]ffective cross-examination is an essential element of the presentation of a full and fair defense and is guaranteed by both the State and the Federal Constitutions." *State v. Veluzat*, 578 A.2d 93, 94 (R.I.1990). The scope of cross-examination lies within the sound discretion of the trial justice and will be reviewed by this court only for an abuse of discretion. *Medeiros v. Yashar*, 588 A.2d 1038, 1043 (R.I.1991) (Weisberger, J., concurring). Nevertheless the court's " 'discretionary authority to limit cross-examination comes into play [only] after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment.' " *State v. Freeman*, 473 A.2d 1149, 1153–54 (R.I.1984).

At trial Arthur MacRae admitted that his description of the gunman became more detailed each time he was interviewed about the incident. For example, at the hospital immediately after the shooting, MacRae gave a very brief description of the gunman. It is likely that the brevity of this description is more attributable to the fact that he was being treated for gunshot wounds rather than to any lack of memory. At a police interview over a month later and eventually at trial, Arthur MacRae was able to provide a more thorough description. Defense counsel was given wide latitude at trial to question him about the alleged inconsistencies in his descriptions and about the length of time he observed the assailant. This gave defense counsel a sufficient opportunity to cross-examine the witness and therefore afforded him his Sixth Amendment protections.

We find that the trial justice's refusal to allow defense counsel to pursue questions on cross-examination pertaining to whether the victim wanted to change the statement he gave at the hospital was proper. Counsel was permitted to probe the witness concerning alleged inconsistencies in his description. These questions satisfied defendant's right to cross-examination. Questions about whether the witness wants to change his story and repetitious questions about the length of time he observed the gunman can properly be excluded in the discretion of the trial justice.

## VII

The seventh issue that defendant asserts is whether the trial justice erred by deleting a question and answer from the deposition of Dale Schaeffer (Schaeffer) that was read into evidence. Schaeffer was with another witness, Tiberio, at the New York System at the time of the shooting. Schaeffer's testimony was presented to the jury in the form of a deposition because Schaeffer was out of state at the time of the trial. During the deposition defense counsel asked Schaeffer whether Tiberio had been drinking that evening prior to going to the New York System. Schaeffer replied that they both had been drinking for a few hours but that he did not know what Tiberio had been drinking. Defense counsel then asked Schaeffer whether Tiberio was sober. Schaeffer answered this question in the negative. When the deposition was read into evidence, the trial justice sustained the prosecutor's objection to this question and deleted this testimony.

The defendant asserts that the witness could give opinion testimony relating to the drunkenness of Tiberio pursuant to Rule 701 of the Rhode Island Rules of Evidence. That rule provides:

"If the witness is not testifying as an expert, the witness' testimony in the form of opinions is limited to these opinions which are (A) rationally based on the perception of the witness and (B) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

This rule is buttressed by this court's caveat that the lay witness must have "had an opportunity to observe the person and to give the concrete details on which the inference or description is founded." *State v. Fogarty*, 433 A.2d 972, 976 (R.I.1981).

In the present case Schaeffer's opinion in regard to Tiberio's level of intoxication is rationally based on Schaeffer's perception of the witness and is helpful to a determination of a fact in issue. Schaeffer was with Tiberio for a few hours prior to going to the New York System so he had ample opportunity to observe the manner in which Tiberio conducted himself. Moreover Schaeffer's testimony would help to determine a fact in issue. The theory of the defense at trial was that defendant was not the gunman at the New York System on March 17, 1985. Thus the identification of the gunman was a central issue in the case. Tiberio identified defendant as the gunman at the New York System; therefore, Tiberio's ability to perceive and remember what he saw was directly at issue, and Schaeffer's testimony regarding Tiberio's level of intoxication was important to determining if his testimony is credible.

Nevertheless Schaeffer did not give any concrete details on which his description of Tiberio's state was based as required by this court's decision in *Fogarty*. His testimony did not include, for example, any details about what Tiberio had been drinking or how many drinks he had had or even whether his speech was slurred or whether he had problems walking. Thus, the foundation for admission of opinion testimony was not met, and the trial justice properly denied Schaeffer's opinion concerning whether Tiberio was intoxicated.

## VIII

The next issue that defendant urges on appeal is the question of whether the trial court erred by providing an incomplete response to the jury's request for the rereading of part of Tiberio's testimony. After the jurors began deliberations, they requested a reading of Tiberio's testimony about the "[t]elephone calls in December, eighty-eight, where name Richard Gomes is

mentioned." The court read part of this testimony back to the jury. The court also told the jury, "[I]f we have not responded adequately to your request for testimony, you can send the court another note." The defendant contends that the court erred by providing an incomplete response to the jury's request and by not informing the jurors that they were hearing an incomplete response.

■ The decision to read testimony during jury deliberations clearly rests within the trial justice's discretion. *State v. Giblin*, 568 A.2d 769, 771 (R.I.1990). The trial justice may take into consideration the reasonableness of the jury's request and the difficulty of complying therewith. *Id.* Nevertheless we have stated that "a request from a jury to read back testimony should probably be honored." *State v. Dame*, 488 A.2d 418, 422 (R.I.1985).

■ After a review of the trial record, we conclude that the trial justice should have provided a more complete response to the jury's request. Both the state and defendant objected to the rereading of testimony, arguing that it was incomplete. Specifically, the state argued that the jurors' request could have been responded to by also reading testimony of a witness other than Tiberio. The defendant contended that the court should have ordered that portions of the cross-examination of Tiberio concerning the December, 1988 phone calls about Richard Gomes also should have been reread to the jury. The trial justice should have complied with the requests of both the state and defendant.

■ Nevertheless this omission had a negligible prejudicial effect in our opinion. At trial, testimony about the telephone calls in December 1988 concerning Richard Gomes was presented through Detective Cross as well as through Tiberio, and a witness statement of Detective Cross concerning the substance of the phone conversation was also admitted at trial. It appears that the jury had ample opportunity to hear the substance of the conversation. Furthermore, if the jurors found the response to their request to reread testimony

**1260**

to be incomplete or problematic, they could have requested more information from the court. The error was harmless.

IX

The final issue that defendant asserts on appeal is that of whether the trial justice erred by denying defendant's motion for a new trial. The defendant argues that the verdict of the jury was against the weight and sufficiency of the evidence.

It has long been established that the ruling of a trial justice on a motion for a new trial will not be disturbed by this court unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Grundy*, 582 A.2d 1166, 1172 (R.I.1990); *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989); *State v. LaPointe*, 525 A.2d 913, 914 (R.I.1987).

A review of the trial record persuades us that the trial justice properly denied the defendant's motion for a new trial. The trial justice fairly evaluated all the material evidence that was presented at trial and concluded that it supported the jury's verdict. Moreover we do not find cumulative errors as we found in *State v. Pepper*, 103 R.I. 310, 237 A.2d 330 (1968), where that defendant was granted a new trial based on the cumulative effect of all the errors committed. We reject the defendant's argument that this case resembles *Pepper* in that regard.

For all these reasons the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.