STATE

v.

Gerald MASTRACCHIO, Jr.

STATE

v.

Christopher G. ROFFO.

Nos. 91–79–C.A., 91–138–C.A. and 91–200–C.A.

Supreme Court of Rhode Island.

July 13, 1992.

James E. O'Neil, Atty. Gen., Annie Goldberg and Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin and Barbara Rosin, Asst. Public Defenders, Mary E. Levesque, Middletown, for defendants.

## OPINION

KELLEHER, Justice.

Four individuals, Gerald Mastracchio, Jr. (Mastracchio), Christopher G. Roffo (Roffo), Norman Laurence (Laurence), and John DeCosta (DeCosta), were charged in 1988 with various crimes arising out of an assault at the maximum-security facility of the Adult Correctional Institutions (ACI). Specifically the four men were charged with conspiracy to commit the crime of assault with intent to murder Craig Ruzzo (Ruzzo), assaulting Ruzzo with intent to murder, assaulting Ruzzo with a dangerous weapon, conspiracy to commit assault with intent to murder Henry Stacy III (Stacy), assault with intent to murder Stacy, conspiring to assault Ruzzo with a dangerous weapon, and assaulting Stacy with a dangerous weapon.

The state dismissed the charges of assault with intent to murder and conspiracy to commit assault with intent to murder pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. DeCosta and Laurence pleaded prior to trial. Mastracchio and Roffo proceeded to trial, which began on February 22, 1990, with motions to suppress identification testimony. Following the denial of those motions, trial commenced before a jury on February 27, 1990. On March 7, 1990, the jury returned with guilty verdicts on the four remaining counts.

Subsequent to the jury's return of guilty verdicts on all the remaining counts, Mastracchio and Roffo moved for a new trial pursuant to Rule 33 and also filed applications for postconviction relief with the Superior Court pursuant to G.L.1956 (1985 Reenactment) chapter 9.1 of title 10. Thereafter the trial justice denied Mastracchio's and Roffo's motions for a new trial and also denied their applications for postconviction relief. Mastracchio's and Roffo's direct appeals and their appeals from denial of postconviction relief have been consolidated for this court's consideration. We affirm the convictions.

The collective facts of this case relate a tale of the viciousness that can inhere in life behind prison walls. On January 10, 1988, Ruzzo and Roffo engaged in conversation in the prison gymnasium regarding a woman whom both men had apparently dated at one time or another prior to their incarceration. With their jealousies aroused, the conversation escalated into a confrontation as the two men exchanged words. Ruzzo testified that he got "fed up" with the exchange and uttered a retort that ended the conversation. About a half hour later Roffo returned to the gym with another inmate, DeCosta, who then challenged Ruzzo to go outside and fight. Ruzzo stated that he demurred "[b]ecause [he] didn't know who would be out there."

The following day, at approximately 12:45 p.m., Ruzzo and his step-brother, Stacy, approached the steps leading to the gym and encountered Mastracchio, whom Ruzzo recognized from prior incarceration, although he did not recall his name at that time. Ruzzo testified that Mastracchio

asked him, "What's up?" to which Ruzzo responded, "Not much. What's up with you?" Ruzzo reached out to shake hands, but Mastracchio refused, saying, "You'll see what's up in about three seconds."

Ruzzo testified that almost immediately after this exchange, he was grabbed from behind and held while Mastracchio punched him in the face and kicked him. Stacy testified that he observed Roffo, whom he knew by name, grab Ruzzo and pin his arms to his sides. Ruzzo was then thrown to the ground where a more serious attack ensued—inmate Laurence, who had a grudge to settle with Ruzzo, struck Ruzzo several times with "an ice chopper," causing him serious injuries. Stacy testified that while Ruzzo was being knocked down, he was struck by a metal object; and as he fell to the ground, he saw inmate DeCosta swinging a square shovel at him. Stacy testified that he was struck six or seven times before correctional officers came out through the gym doors and stopped the attack. It was discovered at trial that the ice chopper and the shovel had been assigned to other inmates for the purpose of clearing snow and ice from the prison yard.

William Curtin (Curtin), a correctional officer for ten years at the ACI, was assigned to the area inside the gym doors on the day of the attack. Curtin testified that he was responsible for monitoring "the flow of traffic" from the yard through the gym doors to the cell block. Curtin said he knew Mastracchio and Roffo from seeing them "mostly every day" for at least a year before the incident in question. Curtin testified that he was at his post downstairs in the gymnasium on January 11, 1988, when his attention was drawn by "a pounding of something outside the gym door area." Curtin testified that as he proceeded up the stairs to the steel door leading outside, he passed a large window through which he could see into the yard and observed inmate Laurence striking Ruzzo, who was on the ground, with an ice

chopper and inmate DeCosta striking Stacy with a shovel. Curtin glanced to his right and "saw inmate Mastracchio with his back up against the steel door that [he] would have to go through to get out into the yard." Curtin recalled that he rushed to the door and tried to force it open with his "full weight" but was unsuccessful because of resistance he felt from the other side. Curtin then stepped back and charged the door, forcing it open and pushing Mastracchio off the staircase into the snow.

Curtin testified that when he entered the yard, "inmates Laurence and DeCosta just stood there and looked at me with their weapons in their hands, and then dropped their weapons." At trial Curtin identified both an ice chopper admitted as the weapon Laurence had held and a shovel admitted as the weapon DeCosta had held. Curtin stated that when he entered the yard, inmate Roffo "was walking away from the incident with his back towards [him]" and soon blended in with the rest of the crowd as Curtin tended to the victims.

After the state completed its case in chief, the defense called Mr. N to the stand.[1] Mr. N, an inmate at the ACI at the time of the assault, testified that on January 11, 1988, he and Mastracchio headed to the gym to work out after lunch. Mr. N stated that he and Mastracchio were standing on the top steps in front of the gym door when they witnessed the assault on Ruzzo and Stacy. Mr. N stated that during the assault the door partially opened and hit him in the foot. Mr. N testified that shortly thereafter the door flew wide open, and he was knocked behind the door and Mastracchio was thrown off the steps. Mr. N's testimony implies that Curtin could not initially open the door because it hit Mr. N on the foot and thus Mastracchio's presence on the steps was wholly innocent.

After his direct testimony, the prosecutor proceeded to cross-examine Mr. N by asking him how he became acquainted with

---

**1.** Because of highly sensitive and confidential information regarding Mr. N, we shall not re-veal his identity in this opinion.

Mastracchio and how well he knew him. The following exchange then took place:

"Q: How is your health, Mr. [N]?

"A: Good.

"Q: Mr. [N], have you tested positive for HIV?

"MR. ANDERSON: Objection.

"THE COURT: What was the last question?

"(Question read)

"THE COURT: I am going to sustain the objection. I don't see what the, where this has any—how this will assist the jury. Next question."

Some thirty-five questions and several minutes after this exchange, Mr. N appeared to falter and asked for a glass of water. The trial justice invited Mr. N to "have a seat" and to take his time. After a pause the questioning resumed, continuing for several minutes, apparently without incident, followed by brief redirect and re-cross-examinations. Mr. N's testimony ended the court day. The following day both sides rested, and counsel presented closing arguments. During his closing, the prosecutor discussed the credibility of the defense witnesses generally and Mr. N specifically:

"Look at people's conduct on the stand, and what all of this goes to is our own unique human ability to look at a person and form an opinion as to whether that person is telling the truth or not. Or whether he stands before you, whether he looks you in the eye and is telling you what he is saying, or whether he is nervous and fidgity [sic] and looks the other way like [Mr. N] did when he was getting sweaty on the stand and had to sit down.

"You get the feeling that you get from the pit of your stomach that tells your head that there is something wrong here. That this person is not being completely honest with you, and I can point out several instances in this trial when you probably felt it.

"Did you also get the feeling that I am talking about, the feeling from the pit of your stomach that goes to the top of your head, when [Mr. N] took the stand? When he started sweating? When he had to be seated? When he couldn't look at you when he was delivering his testimony?"

Mastracchio and Roffo raise several issues on direct appeal. However, we first turn our attention to Mastracchio's and Roffo's collateral attack on the convictions in the form of an appeal from the denial of their applications for postconviction relief.

Posttrial proceedings revealed that Mr. N had tested positive for HIV [2] while incarcerated at the ACI. Mr. N testified in camera that the HIV question precipitated his physical reactions on the witness stand, including the sweating and feeling faint. Defense counsel contends that the prosecutor's asking of Mr. N whether he was HIV positive was solely designed to upset the witness and to fluster him on the witness stand. Defense counsel argues that the prosecution destroyed Mr. N's composure and then used his demeanor as a basis for arguing to the jury that Mr. N was not a credible witness. Defense counsel further maintains that the prosecution's "egregious" misconduct in asking the HIV question was tantamount to preventing Mastracchio from presenting a witness and therefore violated Mastracchio's right to due process and a fair trial as guaranteed under article 1, section 10, of the Rhode Island Constitution and the Sixth Amendment to the United States Constitution.

██ We subscribe to the view expressed by the United States Supreme Court that prosecutorial misconduct may "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618, 630 (1987)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 437 (1974)).

**2.** The virus that eventually causes Acquired Immune Deficiency Syndrome (AIDS) is now known as the Human Immunodeficiency Virus, or HIV, and shall be so referred to in this opinion.

For prosecutorial misconduct to constitute a due-process violation, it must be " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985) quoting *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 352 (1976)). This court has often considered the issue of prosecutorial misconduct in the context of discovery violations with regard to Rule 16 of the Superior Court Rules of Criminal Procedure. On several occasions we have found that such misconduct warrants a reversal of conviction. *State v. Heredia*, 493 A.2d 831, 833 (R.I.1985); *State v. Concannon*, 457 A.2d 1350 (R.I.1983); *State v. Coelho*, 454 A.2d 241 (R.I.1982). In the instant controversy, however, we find otherwise.

■ The record reveals that defense counsel immediately objected to the HIV question asked of Mr. N, before an answer was offered. The trial justice sustained the objection and moved the prosecutor to another line of questioning. The sequence of events at issue here—a single question, an immediate objection, and the sustaining of that objection—is factually similar to the sequence of events addressed by the Court in *Greer v. Miller*. In *Greer* the Court found no due-process violation resulting from an unconstitutional question asked of the defendant in violation of the holding set forth in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[3] In the instant controversy defense counsel requests that we find a due-process violation as a result of an irrelevant question. This court is of the opinion that the record does not support Mastracchio's claim that the HIV question interfered with his right to present a witness. Mr. N told his complete story on direct examination and stated in camera that he had nothing to add to this testimony.

The trial justice further noted that even in the absence of the improper question, Mr. N's testimony "was difficult to believe" and that as an independent trier of fact, he would have reached the same conclusion regarding the guilt of both defendants "in the absence of the question" relative to HIV. The record demonstrates that Mr. N's testimony contradicted not only Ruzzo's testimony and Stacy's testimony but also that of Curtin, whom the trial justice found to be the most credible witness. These three witnesses testified about seeing only Mastracchio on the steps at the time of the assault.

With respect to postconviction relief, the trial justice stated:

"The Court has clearly reviewed the question of the impact of Mr. N's demeanor as it relates to the weight of his testimony and determined that it was of no consequence in the outcome of the trial. Based on the Court's independent assessment, the Court finds that there was no interference with the right to a fair trial, particularly as it is argued by the defendant as it relates to the demeanor of the witness, Mr. N. * * * I found no basis during the trial, as I stated before, to pass the trial with respect to these defendants because of the nature of the impact of this question and Mr. N's final reaction which took place sometime after the question itself had been asked. Again, the Court concludes that there was no infringement or interference with the rights of these defendants."

The trial justice's finding that the HIV question had no appreciable impact on the fairness of the trial is entitled to stand undisturbed on review in the absence of clear error or a showing that material evidence was overlooked or misconceived by the trial justice. *See State v. Dufresne*, 436 A.2d 720, 722 (R.I.1981). This court is limited to the inquiry of whether the prose-

---

**3.** The holding in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), may be stated as follows: if a defendant invokes his or her *Miranda* right to remain silent, the due-process clause of the United States Constitution bars "the use for impeachment purposes" of a defen-dant's postarrest silence. In *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the prosecutor attempted to violate the holding in *Doyle* by asking a defendant, "Why didn't you tell this story to anybody when you got arrested?"

cutor's remarks are of such "substantial magnitude" as to require reversal of Mastracchio's and Roffo's convictions. *See United States v. Bussey,* 942 F.2d 1241, 1253 (8th Cir.1991); *People v. Gleash,* 209 Ill.App.3d 598, 154 Ill.Dec. 348, 568 N.E.2d 348 (1991). Given the brevity of the original exchange and reviewing the prosecutor's remarks in the context of the entire record, including all the evidence admitted at trial, we believe the trial justice was correct in finding there was no due-process violation of Mastracchio's and Roffo's constitutional right to a fair trial.

Notwithstanding the foregoing, we emphasize that this court does not condone the HIV question asked of Mr. N by the prosecutor. "The primary duty of a prosecutor is to achieve justice, not to convict." *State v. Powers,* 526 A.2d 489, 494 (R.I. 1987). Not only was the question irrelevant, as the state concedes in its brief, but we also believe it was inappropriate and asked at the risk of a mistrial being declared. However, as the trial justice noted, at the time of the improper question defense counsel did not make a motion to pass the case, "[p]erhaps believing on the basis of what was observed, there may well not have been a basis for such request." Nonetheless, the issue of AIDS is highly sensitive and should not be brought into a criminal proceeding unless it is truly relevant. Mr. N's contention that his right to confidentiality was breached may indeed be meritorious, but it is not an issue properly before this forum.

We now turn to the other remaining issues raised by Mastracchio and Roffo in their direct appeals. Defense counsel claims on appeal that the trial justice erred in permitting the prosecutor to impeach Mr. N by asking him if he had ever informed the police about exculpatory information he had regarding Mastracchio. On appeal Mastracchio argues that this line of questioning was improper because the prosecutor had failed to establish a proper foundation. *See Commonwealth v. Brown,* 11 Mass.App. 288, 296–97, 416 N.E.2d 218, 224 (1981); *People v. Dawson,* 50 N.Y.2d 311, 321, 406 N.E.2d 771,777, 428 N.Y.S.2d 914, 921 (1980).

■ On many prior occasions this court has stated that it will not consider an appeal based on a matter that was not initially presented and articulated to the trial court. *State v. Estrada,* 537 A.2d 983, 986–87 (R.I.1988); *State v. Byrnes,* 433 A.2d 658, 670–71 (R.I.1981); *State v. Duggan,* 414 A.2d 788, 791 (R.I.1980). By failing to record specific objections, a party is deemed to have waived his or her rights on appeal. *State v. Long,* 488 A.2d 427, 432 (R.I.1985).

■ The record indicates that defense counsel merely objected to the question at issue and failed to pursue or specifically to articulate any grounds in support of the objection. Defense counsel is now precluded from raising for the first time on appeal the issue of whether the prosecutor had established a proper foundation before asking the question at issue.

The second issue defense counsel raises on appeal is that the trial justice erred in denying Mastracchio's motion to suppress the out-of-court and in-court identifications of him made by Stacy. Specifically defense counsel contends that Stacy's out-of-court identification of Mastracchio was achieved by the use of a highly suggestive photo array and lacks independent reliability.

■ This court recently outlined the well-settled two-step test used to determine whether an identification procedure employed by police violated a defendant's due-process rights as follows:

"A court must (1) consider whether the procedures used were unnecessarily suggestive, and if found to be so, must then (2) determine whether the identification lacks 'independent reliability' despite the nature of the identification procedure. *State v. Camirand,* 572 A.2d 290, 293 (R.I.1990). When an identification procedure is found to be unnecessarily suggestive and conducive to a substantial likelihood of misidentification so that the accused is stripped of his or her due-process rights, a witness's out-of-court identification is not admissible at trial. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.

Ct. 375, 382, 34 L. Ed. 2d 401, 411 (1972)." *State v. Holley*, 604 A.2d 772, 776 (R.I.1992).

██ The record supplies the following additional facts. On January 18, 1988, a week after the assault, Lieutenant John Turner (Lieutenant Turner) of the Rhode Island State Police presented to Stacy an array of twelve photos of various individuals, including those persons whom the authorities suspected had been involved in the assaults. Included in this array were two photographs of Mastracchio. When asked by Lieutenant Turner to pick out the man standing at the gym door, Stacy chose the photographs of Mastracchio. Stacy also picked out photographs of the other inmates involved in the assault, including Roffo, DeCosta, and Laurence.

Defense counsel argues that the inclusion of two photos of Mastracchio in the array made the identification procedure unnecessarily suggestive. *See, e.g., United States v. Mears,* 614 F.2d 1175, 1177 (8th Cir.1980)(photographic identification procedure that included two photos of the defendant was improperly suggestive); *People v. Lee,* 54 Ill.2d 111, 117, 295 N.E.2d 449, 452 (1973) ("[i]t is difficult to imagine more suggestive circumstances surrounding a photographic identification" than when more than one photograph of the defendant was included in the array); *State v. Kasper,* 137 Vt. 184, 192, 404 A.2d 85, 90 (1979)(suggestiveness of including two photographs of the defendant in array is "patent").

On prior occasions this court has upheld the use of photo arrays in which a defendant's photo is repeated. However, we have done so only when those photographs are substantially dissimilar. *See State v. Ferrara,* 571 A.2d 16, 21 (R.I.1990); *State v. Pulphus,* 465 A.2d 153, 163 (R.I.1983). Unlike the situation in *Ferrara* and *Pulphus,* scrutiny of the record in the instant matter reveals that the two photographs of Mastracchio were not dissimilar, and therefore, we believe they were unnecessarily suggestive.

██ Having determined that the photo array was unnecessarily suggestive, we are compelled to move to the second prong of the test and inquire whether Stacy's identification of Mastracchio was independently reliable. "The factors to be considered when determining if an identification is independently reliable include the opportunity of the witness to view the criminal, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *State v. Gomes,* 604 A.2d 1249, 1253 (R.I.1992)(quoting *State v. Camirand,* 572 A.2d 290, 294 (R.I. 1990)).

Applying the factors outlined above to the present controversy leads to the conclusion that the trial justice correctly denied Mastracchio's motion to suppress the out-of-court identification made of him by Stacy.

At the suppression hearing Stacy testified that before the attack he was standing "a couple feet" from Mastracchio and had the opportunity to observe him for a minute and a half before the attack commenced. Stacy specifically recalled that Mastracchio had refused to shake Ruzzo's hand and told him, "You'll find out what's up in about three seconds." On the day of the assault Stacy described Mastracchio as having long hair and a scruffy beard, two characteristics that were not apparent in the photos of Mastracchio chosen by Stacy one week after the assault. However, Stacy testified that after a careful examination, he was certain the photos of Mastracchio he chose were of the man on the steps on the day of the assault.

██ We believe it appropriate to note that when reviewing the decision of a trial justice on a motion to suppress, "the duty of the reviewing court is to view the evidence in the light most favorable to the government and apply the 'clearly erroneous' rule." *Gomes,* 604 A.2d at 1253 (quoting *State v. Beaumier,* 480 A.2d 1367, 1375 (R.I.1984)). Stacy's testimony, which the trial justice found credible, reveals that he had ample time in which to observe Mastracchio at a close distance in the light of midday. Furthermore the photo array was

presented to Stacy seven days after the attack, a relatively short period given the trauma of the assault, from which we can infer that Stacy still had a fresh recollection of those involved in the attack. Therefore, we believe that Stacy's out-of-court identification was independently reliable despite the suggestive photo array that was presented to him. Last, as the outof-court identification was sufficiently reliable, we believe Stacy's in-court identification was likewise proper.

Mastracchio and Roffo also claim on appeal that the trial justice erroneously denied their motions for judgments of acquittal. Defense counsel argues that the evidence admitted at trial was insufficient to support a verdict of guilt that Mastracchio and Roffo conspired to assault Ruzzo and Stacy with dangerous weapons.

In ruling on a motion for a judgment of acquittal, the trial justice must "weigh the evidence in the light most favorable to the state, draw from such evidence all reasonable inferences that are consistent with the guilt of the accused and give full credibility to the state's evidence." *State v. Parente,* 460 A.2d 430, 440 (R.I. 1983). The trial justice must grant the motion if the evidence so viewed fails to establish the defendant's guilt beyond a reasonable doubt. *Id.* (citing *State v. Darcy,* 442 A.2d 900, 901–02 (R.I.1982)).

Conspiracy is defined as a combination of two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose. 460 A.2d at 440; *State v. Sabitoni,* 434 A.2d 1339, 1342 (R.I. 1981). The government must prove beyond a reasonable doubt that each defendant had the specific intent to violate the substantive statute. *United States v. Previte,* 648 F.2d 73, 82 (1st Cir.1981).

Because it is difficult to prove in complete detail the explicit terms of conspiracy agreements, the goals of the conspirators "may be inferentially established by proof of the relations, conduct, circumstances, and actions of the parties." *State v. Gordon,* 508 A.2d 1339, 1349 (R.I.1986)(citing *State v. Ahmadjian,* 438

A.2d 1070, 1084–85 (R.I.1981)). Furthermore this state has adopted the rule that "where several persons combine or conspire to commit an unlawful act * * * each is criminally responsible for the acts of his associates or confederates in the furtherance of any prosecution of the common design for which they combine. Each is responsible for everything done by one or all of his confederates, in the execution of the common design, as one of its probable and natural consequences, even though the act was not a part of the original design or plan, or was even forbidden by one or more of them." *State v. Barton,* 424 A.2d 1033, 1038 (R.I.1981)(quoting *State v. Miller,* 52 R.I. 440, 445–46, 161 A. 222, 225 (1932)).

The evidence in this case established that Roffo and Ruzzo had a hostile exchange the day before the assault and that later on that same day Roffo and DeCosta approached Ruzzo and his stepbrother, Stacy, and DeCosta challenged Ruzzo to a fight. In considering the motion for judgment of acquittal, the trial justice summed up the rest of the state's evidence in the following manner:

"Ruzzo and Stacy, who were stepbrothers, who were known to be related, were walking, walking from there, the dining room into a specific area of the yard, leading into the gym at approximately one o'clock in the afternoon of January 11. Something very unusual happened on that day. The Court can look upon it as pure coincidence as perhaps the witnesses on behalf of the defense will describe it. But in accordance with the evidence adduced on behalf of the State, Ruzzo and his brother were approaching the door leading into the stairway down into the gym, or into the general area of the maximum security building. Mr. Mastracchio was seen on the entrance of the, or on the top of the stairway, leading into the building, standing there. And at that point Ruzzo extended his hand, which did not meet with the joining of a similar manifestation of friendship with Mr. Mastracchio. And after Ruzzo mentioned what's up, Mastracchio responded you will know in about three

seconds. In just about that time some very interesting things happened. Roffo restrains Ruzzo with an arm grip from the rear. Mastracchio begins to kick and punch Ruzzo. Mr. Laurence shows up with the ice pick, strikes Ruzzo at least twice, if not more, inflicting very, very serious injury upon Ruzzo. Something else interesting happens. The gentleman who had previously invited Ruzzo outside to square things the day before appears on the scene with a shovel, and he goes to work on Stacy. Stacy sustains some very serious injury."

In addition, Curtin testified that he heard sounds of a disturbance in the yard and that when he looked out into the yard, he saw Laurence and DeCosta attacking Ruzzo and Stacy. Curtin also observed Mastracchio holding shut the door that Curtin would have to go through to stop the attack. Curtin recalled that when he finally forced the door open, Mastracchio was thrown off the steps, Laurence and DeCosta stood there with the weapons in their hands, and Roffo walked away, disappearing into the crowd.

The conduct, actions, and circumstances with respect to Mastracchio, Roffo, Laurence, and DeCosta on the day of the assault support the inference that they participated in what the trial justice characterized as a "well executed" plan to assault Ruzzo and Stacy. With regard to defense counsel's argument that the state did not prove that the conspiracy included an agreement to assault Ruzzo and Stacy with dangerous weapons, the trial justice correctly pointed out that once the court found that the conspiracy to assault Ruzzo and Stacy existed, it could find that anything that "flows from that conspiracy, the consequences, the acts of any one of the four is imputed to the other three. So the charging of Mastracchio and Roffo with the assault with a dangerous weapon * * * is clearly established." *See Barton,* 424 A.2d at 1038.

The evidence viewed most favorably to the state and the inferences drawn therefrom support the finding that Mastracchio and Roffo were guilty of conspiring to assault Ruzzo and Stacy with dangerous weapons. Therefore, we believe the trial justice was correct in denying their motions for judgment of acquittal on the conspiracy charges.

Roffo's final claim on appeal is that the trial justice erred when he failed to instruct the jury as requested on aiding and abetting. The record reveals that Roffo requested the following jury instruction on aiding and abetting: "The fact that one person strikes another with his fist, after which another unexpectedly assaults the same victim with a dangerous weapon, will not constitute the first offender a guilty party to the charge if he had no knowledge of such an intent in the mind of the other."

■ This court has frequently stated that "a trial justice need only instruct a jury regarding those rules of law that must be applied to the issues raised at the trial." *State v. Medeiros,* 535 A.2d 766, 772 (R.I. 1987). Furthermore, a requested jury instruction should not be given if it is not supported by the evidence admitted at trial because such an instruction tends to mislead or confuse the jury. *State v. Butler,* 107 R.I. 489, 491, 268 A.2d 433, 434 (1970).

■ The evidence in the instant controversy does not support the requested jury instruction on aiding and abetting. Evidence put forth at trial demonstrated that Roffo played a part in a plan including several inmates—namely, Mastracchio, Laurence and DeCosta—to attack Ruzzo and Stacy. It truly stretches the bounds of credibility to expect this court to believe that Roffo was ignorant of Laurence's and DeCosta's eager anticipation of their prey's arrival. It was not unexpected that Laurence and DeCosta would consummate the attack initiated by Mastracchio and Roffo— rather the assault by Laurence and DeCosta with deadly weapons was the fait acompli of a well-orchestrated plan. Accordingly the trial justice correctly refused to instruct the jury on aiding and abetting as Roffo requested.

For the reasons set forth above, the appeals of Roffo and Mastracchio with respect to their convictions and the denial of postconviction relief are denied and dis-

missed, the judgments of conviction appealed from are affirmed, and the cases are remanded to the Superior Court.