STATE

v.

Kayborn BROWN.

No. 2010–102–C.A.

Supreme Court of Rhode Island.

May 10, 2012.

Virginia M. McGinn, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on April 3, 2012, on appeal from a Superior Court judgment of conviction after a jury verdict finding the defendant, Kayborn Brown (defendant or Brown), guilty of first-degree robbery. Brown was sentenced to forty years at the Adult Correctional Institutions, with fifteen years to serve and twenty-five years suspended, with probation. On appeal, the defendant contends that the trial justice (1) erred in denying his motion to suppress the out-of-court identification based on a photographic array he contends was unduly suggestive; and (2) abused his discretion under Rule 403 of the Rhode Island Rules of Evidence by denying the defendant's motion *in limine* to exclude evidence of a fraudulent charge to the complainant's credit card that occurred shortly after the robbery. We affirm the judgment of conviction.

### Facts and Travel

On the afternoon of June 26, 2008, James Torres (complainant or Torres) was beaten and robbed by two men as he walked home from the Providence campus of Community College of Rhode Island, where Torres was a student and employee. On October 24, 2008, a grand jury returned an indictment charging defendant and his brother, Keishon Brown (Keishon), with first-degree robbery in violation of G.L.1956 § 11–39–1(a). In September and October 2009, defendant and Keishon were tried together before a jury. Before trial, the trial justice entertained two preliminary motions filed by defendant, and it is

those rulings that form the basis of defendant's appellate arguments.

At trial, Torres testified that as he was walking home from campus around 4 p.m. on the afternoon of the robbery, he noticed two men across the street. Torres described the men: "[o]ne was about five ten, he was wearing a black hoodie, had braids [and] dark skin [and the] second one was wearing a yellow shirt, was also dark skinned and was wearing a wave, a nylon cap." The two men crossed the street and approached Torres—inquiring about the time. Torres testified that in order to answer that question, he took out his cellular phone and the man in the black hoodie demanded that Torres relinquish the phone to him. When Torres refused, the man produced a firearm, held the gun to Torres's head, and ordered him to turn over the phone. When Torres—who testified that he was frozen with fear—made no response, the man with the gun bashed him over the head with the weapon, and then both men proceeded to "pummel[ ]" him. As the onslaught continued, Torres attempted to shield himself from the blows. The assailants forced him to the ground, continuously stomping and kicking him in the head until he was bleeding. When Torres finally was able to break free, he fled the scene. Torres testified that he had his MP3 player and phone in his hand as he ran away, and his backpack was still in place; his wallet, however, was missing from the pocket of his pants.

Torres testified that as he ran home, he encountered several youths in his neighborhood who inquired about what had happened. When Torres told them that he had been "mugged" and beaten, the youths responded, "Oh, it must have been Comstock boys" or "C-block." Torres proceeded home, and the police were called. He was taken to the hospital and treated for injuries to his shoulders, arm, and head. From the hospital, Torres contacted his credit card company in order to cancel his card and inquire about whether any charges had been made. Torres was informed that a charge for $102 had been made to T–Mobile—a wireless telephone service provider; Torres reported the charge as fraudulent.[1]

At trial, Torres identified defendant and his brother as the two men who robbed and beat him. The record also disclosed that Torres had made an out-of-court identification of defendant from a photographic array shown to him at the Providence Police Department six days after the robbery. Torres identified defendant as the man with the gun and recalled that he "recognized him instantly" when shown the array.[2] Providence Police Detective Robert DeCarlo (Det. DeCarlo), who investigated the robbery, testified that he had compiled the photographic array based on Torres's description of his attackers as "two dark-skinned males * * *, one wearing a yellow shirt, one wearing a black hoodie." He further testified that Torres identified defendant's picture from the array "[r]ight away, [with] no hesitation."

Ronald Witt (Witt), the keeper of the records for T–Mobile, also testified at trial. Witt stated that a credit card, which evidence revealed was issued to James Torres, was used at 5:12 p.m.—approximately an hour after the robbery—to make a payment of $102.36 to a T–Mobile cellular telephone account in the name of Dechana Vicoria. The T–Mobile records indicated that Dechana Vicoria resided at 100 Daboll

---

1. Torres testified that he did not make any charges to his credit card on the day of the robbery and that he did not have a T–Mobile account.

2. Torres also later identified Keishon from another photographic array.

Street in Providence—a short distance from the scene of the robbery—and that the account holder had a birthdate of August 6, 1973. Evidence introduced at trial showed that defendant's mother, Charlotte Brown, had the same address and birthdate as that of the T–Mobile account holder. According to the police database, defendant and his brother also resided at 100 Daboll Street in Providence, which was described as a multiunit tenement dwelling.

After the close of evidence, the jury returned a verdict finding defendant guilty but acquitting Keishon.[3] The defendant filed a motion for a new trial, which the trial justice denied. The defendant filed a timely notice of appeal.

### Standard of Review

A trial justice's decision denying a motion to suppress an identification will not be disturbed on appeal unless it is deemed to be clearly erroneous. *State v. Texter*, 923 A.2d 568, 573 (R.I.2007). In determining whether the trial justice's decision was clearly erroneous, this Court must "assess the available evidence in the light most favorable to the state." *Id.* (citing *State v. Luciano*, 739 A.2d 222, 226 (R.I.1999)).

Furthermore, it "is well settled that we review a trial justice's decision admitting or excluding evidence under an abuse of discretion standard." *State v. Marmolejos*, 990 A.2d 848, 851 (R.I.2010) (citing *State v. Reyes*, 984 A.2d 606, 614–15 (R.I.2009); *State v. Evans*, 742 A.2d 715, 719 (R.I.1999)). This Court will not reverse a trial justice's ruling admitting evidence over a Rule 403 objection unless it constitutes a clear abuse of discretion. *See State v. Shelton*, 990 A.2d 191, 202 (R.I.2010) (citing *State v. Tempest*, 651 A.2d 1198, 1216 (R.I.1995)).

### Analysis

We first address defendant's argument that the trial justice should have excluded the complainant's out-of-court identification of defendant from a photographic array. The defendant sought to exclude this evidence, contending that the photographic array from which Torres identified defendant was unduly suggestive. Specifically, defendant asserted that of the six photographs in the array, only two depicted "dark-skinned black males" and, consequently, only two of the six pictures matched Torres's description of his attackers. The defendant further averred that the improperly suggestive out-of-court identification tainted Torres's in-court identification of defendant to the extent that the trial justice also should have suppressed the in-court identification. *See State v. Holland*, 430 A.2d 1263, 1269 (R.I. 1981) (noting that improper pretrial identification procedures may taint a subsequent in-court identification).

When faced with determining whether an identification procedure was improper, a trial justice must perform a two-step analysis. *Texter*, 923 A.2d at 573–74 (citing *Luciano*, 739 A.2d at 226; *State v. Mastracchio*, 612 A.2d 698, 704 (R.I.1992)). The trial justice first must "consider whether the procedure used in the identification was unnecessarily suggestive." *Id.* at 574 (citing *Luciano*, 739 A.2d at 226; *Mastracchio*, 612 A.2d at 704). Only if the trial justice answers that first question in the affirmative does he or she proceed to the second step—determining "whether in the totality of the circumstances the identification was nonetheless

---

3. We note that three alibi witnesses testified on Keishon's behalf, one of whom was a Providence Police officer who testified that he had arrested Keishon for loitering at 4:51 p.m. on the afternoon that Torres was robbed.

reliable." *Id.* (quoting *Luciano,* 739 A.2d at 226).

Before ruling on defendant's motion to suppress the out-of-court identification, the trial justice heard testimony from Det. De-Carlo, who testified that several days after the robbery, Torres gave a statement to the police in which he described his attackers. In that statement, Torres described one perpetrator—defendant—as being around twenty years old, "five foot ten, wearing a black hoodie, a dark-skinned male with a thin build;" the second he described as being a "dark-skinned male, around 20 years old, five ten, chunky, wearing a yellow shirt and black pants." Detective DeCarlo also testified that a police incident report was generated on the day of the robbery and recorded Torres's description of the perpetrators as "two black males."

Detective DeCarlo explained that the police compiled the photographic array based on Torres's description of the suspects and the fact that the police believed that the suspects were likely from the Comstock or Congress Avenue area of the city, based on the statements made to Torres by the youths he encountered after the robbery. On cross-examination, Det. DeCarlo testified that although the average person may consider only two of the photographs in the array to depict dark-skinned black males, it was his opinion that "there could be three, four, five or six" in the array. Torres also testified at the suppression hearing and stated that he would classify four of the photographs as depicting dark-skinned black males. He also testified that he independently identified defendant from the array, without any suggestion from the police.

At the conclusion of the testimony, the trial justice denied the motion to suppress. He recounted the eyewitness identification procedures the police followed when showing the photographic array to Torres, and determined that the identification was conducted in a non-suggestive manner. Additionally, the trial justice underscored the fact that Torres identified defendant "right away," when shown the photographs. The trial justice noted that the pictures in the array were selected based upon Torres's description of the suspects and "seemed to me to be an attempt to try to pick out people who were similar in looks, complexion and facial structure." Accordingly, the trial justice ruled that the array was not unduly suggestive.

■■ We discern no error in the decision of the trial justice. "In determining whether the photographic array poses a substantial risk of misidentification, we must 'compare the physical characteristics of each individual featured in the display to the general description of the suspect given to the police by the victim.'" *State v. Gatone,* 698 A.2d 230, 235 (R.I.1997) (quoting *State v. Barnes,* 559 A.2d 136, 140 (R.I.1989)). We accord great weight to the finding by the trial justice that the pictures in the array featured men who were similar in appearance and consistent with Torres's description of his assailants. This Court is not persuaded by defendant's argument that the array was unnecessarily suggestive because, defendant contends, only two dark-skinned black males were featured. We note at the outset that the record does not disclose that Torres described the assailants to the police as "dark-skinned black males."[4] Ad-

4. The record reveals that Torres described his assailants as "black males" in his initial police report and as "dark-skinned" males in a subsequent statement to the police, but never as dark-skinned black males. We are of the opinion that the police cannot be faulted for compiling a photographic array containing a smaller ratio of dark-skinned black males when the complainant did not describe his assailants as such.

ditionally, it is a matter of opinion how many African–American males with dark complexions were depicted in the array; Torres testified that in his opinion, up to four men fit that description, and the trial justice opined that as many as five men in the array could be characterized as dark-skinned black males. Consequently, we affirm the trial justice's denial of defendant's motion to suppress the out-of-court identification. Accordingly, once a finding is made that the "out-of-court identification is not impermissibly suggestive, then the in-court identification is likewise proper." *Id.* at 236 (citing *State v. Gardiner*, 636 A.2d 710, 716 (R.I.1994); *Mastracchio*, 612 A.2d at 706). We are satisfied, therefore, that defendant's contention that Torres's in-court identification of defendant was improperly tainted is without merit.

 We now consider the subject of defendant's second assertion of error: the trial justice's decision to allow into evidence business records showing payment made to a T–Mobile account in the name of Dechana Vicoria and charged to Torres's credit card. The defendant argues that the evidence was irrelevant and highly misleading because the state never established that "Dechana Vicoria" was a fictitious name or that defendant had any connection with the T–Mobile account holder who shared his address, his mother's address, and his mother's date of birth—similarities that defendant argues could be mere coincidences. Accordingly, defendant avers that the trial justice abused his discretion by denying defendant's motion *in limine* because the evidence was only marginally relevant and highly prejudicial. We disagree.

 Rule 401 of the Rhode Island Rules of Evidence broadly defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 provides for a balancing test by which a trial justice determines whether relevant evidence should nonetheless be excluded. Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." It is a well-settled principle of our law that "the discretion to exclude evidence under Rule 403 must be exercised sparingly." *Shelton*, 990 A.2d at 202 (quoting *State v. Hak*, 963 A.2d 921, 928 (R.I.2009)).

Before Witt testified about the T–Mobile business records, the trial justice conducted a *voir dire* examination and heard argument from counsel regarding defendant's motion *in limine* to exclude the evidence.[5] At the conclusion of arguments, the trial justice determined that:

> "the State has presented evidence that would show that these defendants had some linkage with 100 Daboll Street. * * * Now, add to that the fact that the person named on the account happens to have the same date of birth as the defendants' mother, certainly, to me is enough to present a situation where a reasonable inference could be drawn that these defendants were involved somehow in the use of this credit card for the benefit of someone at that address."

We are not persuaded that the trial justice's decision to admit this evidence was an abuse of discretion. The fact that Torres's credit card was used approxi-

---

5. The trial justice had deferred definitively ruling on defendant's pretrial motion *in limine* pending a determination of whether the state would call a representative from T–Mobile to testify and to provide a foundation for the admission of T–Mobile's business records.

mately an hour after he was robbed and beaten by a man he identified as defendant—who lived at the address listed on the T–Mobile account—and the fact that the fraudulent charge benefitted a woman with the same address and date of birth as defendant's mother, constitute relevant evidence tending to show that defendant was involved in the robbery. The trial justice astutely observed the multiple connections between defendant and the T–Mobile account holder—which was circumstantial evidence connecting defendant to the crime.

However, it was within the purview of the jury to determine what, if any, inferences to draw from the myriad of similarities between the named account holder and the defendant's mother. The defendant was free to argue to the jury that the T–Mobile records were not probative evidence against him, and in fact he did so.[6] The defendant's argument that the state failed to establish a sufficient nexus between the defendant and the fraudulent charge made on Torres's credit card is a matter that goes to the weight of the evidence, not its admissibility. *See Beaton v. Malouin,* 845 A.2d 298, 302 (R.I.2004) (noting that the fact that an opinion is based on a number of assumptions is a factor that goes to the weight of the evidence, and not its admissibility). Accordingly, we affirm the ruling of the trial justice admitting the T–Mobile records into evidence.

### Conclusion

For the reasons explained herein, this Court affirms the judgment of conviction.

The papers in this case may be returned to the Superior Court.

Justice INDEGLIA did not participate.

---

[6.] Counsel for defendant argued in his closing statement that there was no evidence that defendant had taken Torres's wallet, and that the wallet simply could have been lost when Torres ran from his assailants. Counsel also noted that the state presented no definitive evidence linking defendant to the fraudulent credit card charge or establishing that Dechana Vicoria was a fictitious person.