June 29, 2021

**Supreme Court**

No. 2019-196-C.A.

(P1/16-2067A)

(Concurrence begins on page 15)


State                          :

    v.                          :

Carlos Rivera.                  :


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Carlos Rivera. | : |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** The defendant, Carlos Rivera, appeals from an October 15, 2018 judgment of conviction and commitment entered against him in the Providence County Superior Court on one count of first-degree child molestation sexual assault and two counts of second-degree child molestation sexual assault. The defendant's sole contention on appeal is that the trial justice erred by unfairly limiting the testimony of a defense witness, thereby violating defendant's constitutional right to present a full and fair defense. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

## Facts and Travel

This case was initiated by the allegations of the complaining witness, Allison,[1] that defendant, her step-grandfather, had sexually molested her on multiple occasions between July 18, 2013, and July 17, 2015. On July 8, 2016, defendant was indicted by a grand jury on the following counts, all relating to Allison, who was fourteen years of age or younger when the alleged incidents occurred: sexual penetration, to wit, penile/vaginal penetration (count one); sexual contact, to wit, hand to breast (count two); sexual contact, to wit, hand to buttocks (count three); and sexual contact, to wit, hand to vaginal area (count four).

In June 2018, a jury trial was held in the Superior Court. Prior to trial, the state moved *in limine* to preclude any reference at trial to the immigration status of any of the witnesses (including defendant) or concerning immigration proceedings relative to any of the witnesses.[2] At the hearing, the state argued that such references would be irrelevant to the instant case. The state further explained that, if such references were permitted, the trial would "turn into a mini immigration proceeding regarding the status of [defendant]" and would potentially "play[] upon any sympathies of the jury." The state also contended that, based on the minimal

[1] The complaining witness was a minor when the alleged acts of molestation occurred; accordingly, we will use the pseudonym "Allison" to refer to her.
[2] Although several different pretrial motions were presented to the trial justice, the pretrial motion with respect to the immigration status of the witnesses is the only issue that has been pressed on appeal.

documentation as to defendant's immigration proceedings provided to the state, any purported proceedings were "far attenuat[ed] from this case[.]"

Defense counsel responded that the "immigration status and proceedings * * * form the genesis of the[] allegations against [defendant]." He asserted that he should be allowed to question Allison about whether she was aware of the immigration proceedings that involved both defendant and her grandmother, Amanda DeLeone, which proceedings had taken place just three weeks before Allison made her accusation of sexual molestation against defendant. Defense counsel added that the purpose of such questioning would not be to introduce the contents of those proceedings, but rather simply to use the existence of those proceedings and the events that occurred thereafter to demonstrate Allison's knowledge of "how Ms. DeLeone perceived those events * * * [and] her state of mind after those events"—particularly with respect to Ms. DeLeone's feelings toward defendant. Defense counsel added that to deny defendant the opportunity to question Allison as to her knowledge about the immigration proceedings "would be to deny a fundamental right of cross-examination."

The trial justice ruled that he would permit defense counsel to cross-examine Allison on "foundational question[s]"—namely, whether she was aware of the immigration proceedings in which Ms. DeLeone and defendant had participated. Defense counsel replied to the trial justice that, if Allison "is not aware of any of

- 3 -

these proceedings, and does say no, that would be the end of it." The trial justice added that he would postpone ruling on the motion *in limine* as it pertained to the testimony of a particular defense witness—Allison's aunt, Jackelyn Rivera[3]—until the conclusion of the state's case. Allison then began her testimony.

On direct examination, Allison testified that, at the time of the incidents at issue, she was eleven or twelve years old and she lived in Central Falls, Rhode Island. She stated that she lived there with her mother, her younger sister, her grandmother (Ms. DeLeone), and defendant, who was at that time married to Ms. DeLeone.[4]

Allison testified that, on a typical afternoon when she was eleven or twelve years old, she would return home from school, eat a snack in the kitchen, and then would make her way to the bedroom "because there [were] toys there." Allison stated that, on one occasion, defendant, who had also been in the kitchen, followed her into the bedroom. She testified that, once inside the bedroom, defendant engaged in sexual intercourse with her. She added: "He told me * * * what he was going to do is normal and * * * to not say anything." She stated that, although she told him to stop, she did not yell for anyone because she was scared.

---

[3] For the sake of clarity, we shall hereafter refer to Jackelyn Rivera simply by her first name. We intend no disrespect.
[4] Allison also testified that Jackelyn sometimes lived at the Central Falls home with them.

Allison testified that defendant had sexually assaulted her "[s]ix times, seven[,]" and she testified as to what had taken place during some of those incidents. She added that, on at least one other occasion, defendant told her not to tell anyone. Allison stated that, despite defendant's admonitions, when she was thirteen years old, she told her younger sister and her pediatrician about what defendant had done to her.[5] Allison testified that, after speaking to her pediatrician, she spoke to "[a] lot of people[,]" including representatives of the Department of Children, Youth, and Families; officers from the police department; and several medical professionals.

During cross-examination, Allison testified about her relationship with her grandmother, Ms. DeLeone. She stated that she was "not really close to her" and that, even though her grandmother "took care of" her, they "never really talked." Her testimony consisted of the following:

> "[DEFENSE COUNSEL:] Do you remember a time that your grandmother was mad at Carlos because of some issues regarding her ability to live here?
> "[THE WITNESS:] No.
> "[DEFENSE COUNSEL:] Do you remember she went up to * * * Boston at one time and they told her she would have to leave the country?
> "[THE WITNESS:] No.

---

[5] Allison testified that, although she did not discuss with her mother what defendant had done to her, she did tell her mother, one week before she told her pediatrician about defendant, about instances of criminal sexual conduct against her in which her father had allegedly engaged. Allison added that her mother did not believe her.

> "[DEFENSE COUNSEL:] You don't remember that?
> "[THE WITNESS:] No."

At the conclusion of the state's case-in-chief, the trial justice, adhering to his previously stated intention, revisited the state's original motion *in limine*, which had sought to preclude any references to the immigration status of any of the witnesses, now focusing on the motion solely as it pertained to the proposed testimony of Jackelyn, a defense witness, who was the daughter of defendant and Ms. DeLeone.

In arguing against the state's motion, defense counsel made an offer of proof as to the testimony he expected to elicit from Jackelyn. He stated that Jackelyn would testify that she had lived with Ms. DeLeone, Allison's mother, and Allison for a number of years, during which time Ms. DeLeone freely discussed her immigration status. Defense counsel further stated that Jackelyn would testify that, on January 26, 2016, she and Ms. DeLeone had gone to Boston and, on that date, Ms. DeLeone received updated information as to the status of certain immigration proceedings that involved her.[6]

During defense counsel's argument, the trial justice inquired as follows:

> "While I understand you can bring up information of bias, prejudice, other types of motive, the only way under our rules you can do that is if it's evidence that is

---

[6] The defendant also participated in immigration proceedings in Boston on January 26, 2016, but he did not travel there with Ms. DeLeone. They had been divorced well before that date.

admissible to go before the jury. * * * What is the exception to the hearsay rule that a witness that you would call would be able to testify about something she heard some other family member say that wasn't the [d]efendant?"

Defense counsel contended that Jackelyn would testify as to Ms. DeLeone's state of mind that she "was upset about the outcome of those proceedings" and that, during the car ride home from Boston, she "blamed [defendant] for the handling of those [immigration] proceedings." Defense counsel indicated that Jackelyn would testify that Ms. DeLeone spoke freely in her home about her immigration status. He argued that, if allowed to hear this testimony, the jury could consider it to be circumstantial evidence of "a motive for [Allison] to fabricate these allegations * * * merely three weeks after" the immigration proceedings had taken place. Defense counsel added that, because the proposed testimony "goes to the basis of why [Allison] would fabricate the allegations against [defendant,]" said testimony was "key and central" to the defense's theory of the case. Defense counsel further argued that "a motive to fabricate is always relevant as discrediting the witness or affecting the weight of his or her testimony."

The state argued that, because none of the information concerning the immigration proceedings was relevant to the case at hand, Jackelyn should be precluded from making any references to the immigration status of any of the witnesses or to the immigration proceedings in general. The state further

- 7 -

paraphrased the language of Rule 602 of the Rhode Island Rules of Evidence when he stated: "[A] witness cannot testify to any matter unless evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter." The state argued that, because there was no evidence that Jackelyn had any personal knowledge as to whether Allison knew about "any immigration proceedings or anything that was going on at that time for her grandmother * * * or the [d]efendant," she should not be permitted to testify about what Allison might have known about such proceedings.

In partially granting the state's motion *in limine* with respect to Jackelyn's testimony, the trial justice stated:

> "This is a very different situation. Now the [s]tate's case is over. This is a witness being called by the [d]efendant. That the proffer is that * * * —this witness for the [d]efendant is going to raise an issue of somehow bias or motivation for the *complaining witness* to be untruthful, again understanding that the complaining witness has already denied any knowledge of it. But, *more importantly*, what has been proffered at this point in order to raise evidence before the jury, *there needs to be admissible evidence which is an exception to the hearsay rule*. While I understand counsel makes a very artful argument that well, the information should be considered by the jury, not for the truth of the matter asserted, which basically means they're not going to consider it for what it actually says, but maybe the results of what it says.

> "The Court finds that does not rise to the level of admissible evidence before the jury that can make this determination." (Emphasis added.)

Having addressed the threshold question of the admissibility of Jackelyn's proposed testimony concerning the immigration proceedings—and concluding it was not admissible—the trial justice allowed Jackelyn to begin her testimony. She testified that she was the only child born of the marriage of defendant and Ms. DeLeone. She stated that, for a number of years before her parents' divorce, she had lived at the Central Falls home with her parents and her brother. Jackelyn testified that her father moved out of the home in February 2015 and that she moved out in March 2015; she moved back in 2017 and was living there at the time of trial.

Jackelyn also testified about the events that occurred on January 26, 2016, in Boston and while en route back to Rhode Island. Jackelyn testified that, on that day, her mother told her that she was upset with someone; however, the trial justice would not permit Jackelyn to name that person.

In the end, the jury found defendant guilty on counts one, two, and three.[7] The defendant was thereafter sentenced to fifty years' imprisonment, with thirty years to serve and twenty years suspended, with probation, on count one; twenty years in prison, with twelve years to serve and eight years suspended, with probation, on count two (concurrent with counts one and three); and twenty years

---

[7]At the close of the state's case, defense counsel moved for a judgment of acquittal on all four counts. That motion was denied with respect to the first three counts; however, pursuant to an agreement between the parties, count four was dismissed.

in prison, with twelve years to serve with eight years suspended, with probation, on count three (concurrent with counts one and two). The defendant moved for a new trial on the ground that the evidence presented to the jury was insufficient to sustain a conviction on all three counts. That motion was denied, and defendant thereafter timely filed a notice of appeal to this Court.

**Standard of Review**

When a defendant claims that his constitutional right to present a defense was violated, "we engage in a *de novo* review." *State v. Lopez*, 943 A.2d 1035, 1041 (R.I. 2008); *see State v. Albanese*, 970 A.2d 1215, 1222 (R.I. 2009). Additionally, "[t]his Court reviews evidentiary rulings under an abuse of discretion standard." *State v. Jones*, 242 A.3d 47, 51 (R.I. 2020) (quoting *State v. Whitfield*, 93 A.3d 1011, 1016 (R.I. 2014)). "We will reverse a trial justice's ruling on the admissibility of evidence only where 'it constitutes a clear abuse of discretion.'" *State v. Covington*, 69 A.3d 855, 862 (R.I. 2013) (quoting *State v. Brown*, 42 A.3d 1239, 1242 (R.I. 2012)); *see State v. Smith*, 39 A.3d 669, 673 (R.I. 2012). "Furthermore, we are disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *." *Ims v. Town of Portsmouth*, 32 A.3d 914, 926 (R.I. 2011) (brackets omitted) (quoting *State v. Pitts*, 990 A.2d 185, 189-90 (R.I. 2010)).

**Discussion**

On appeal, defendant argues that "the trial justice denied defendant his constitutional right to present a full and fair defense by unfairly limiting the introduction of testimony of a defense witness." He specifically avers that, by not allowing Jackelyn to testify as to what occurred on the day of the immigration proceedings and thereafter, the trial justice thwarted counsel's efforts to strengthen the defense's theory "that [Allison], who had been molested by her father years before, later decided to point the finger at the man responsible for her grandmother's deportation troubles." The defendant further contends that the "trial justice mistakenly viewed the proffered evidence as hearsay[,]" when it was instead being offered "to demonstrate [Allison's] grandmother's state of mind after the hearing as well as her perception that her plight was the fault of [defendant]."

This Court has explicitly recognized the principle that "[u]nder the Compulsory Process Clause of the Sixth Amendment of the United States Constitution, the criminal defendant has the right to present his own witnesses to establish a defense." *State v. Bowling*, 585 A.2d 1181, 1185 (R.I. 1991) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). However, we have also clearly stated that "it is axiomatic that a defendant has no right to introduce evidence that is inadmissible under our well-developed rules of evidence." *State v. Scanlon*, 982 A.2d 1268, 1274 n.10 (R.I. 2009); *see United States v. Pires*, 642 F.3d 1, 13 (1st

Cir. 2011) ("[T]he right to present a defense does not trump valid rules of evidence.").

We first point out that, although the trial justice did not permit any references to be made to the immigration status of any of the witnesses or to the January 26, 2016 immigration proceedings in general terms, he did permit the introduction of some evidence about what happened on that day. More specifically, the trial justice stated that the fact that he substantially granted the state's motion *in limine* did not preclude Jackelyn from "talking about observations as far as physical appearance, observation of anger, things along those lines" caused by the events of January 26, 2016. Accordingly, while Jackelyn did not testify at great length concerning the immigration proceedings, she was, contrary to defendant's assertion, permitted to testify more generally about her observations on that day.

We turn next to defendant's contentions with respect to hearsay. We have explained that "[h]earsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Oliveira*, 961 A.2d 299, 314 (R.I. 2008) (quoting R.I. R. Evid. 801(c)); *see State v. Brash*, 512 A.2d 1375, 1379 (R.I. 1986). "Hearsay is not admissible except as provided by law." *Oliveira*, 961 A.2d at 314 (citing R.I. R. Evid. 802). Hearsay is generally admissible only if it falls within one of the

delineated exceptions to the hearsay rule. *See* R.I. R. Evid. 803; *see also State v. Bergevine*, 942 A.2d 974, 978 (R.I. 2008) ("The rationale for exceptions to the rule against hearsay is that some statements, notwithstanding their nature as hearsay, possess 'sufficient circumstantial guarantees of trustworthiness so as to justify admission of the statement even though the declarant is available and could be called to testify.'") (quoting Rule 803 Advisory Committee's Note).

The defendant's offer of proof indicated that Jackelyn would testify that, on January 26, 2016, she and Ms. DeLeone had gone to Boston and, on that date, Ms. DeLeone received updated information as to the status of her immigration proceedings. It was further represented that Jackelyn would testify that Ms. DeLeone "was upset about the outcome of those proceedings" and that, during the car ride home from Boston, she "blamed [defendant] for the handling of those [immigration] proceedings." Lastly, defendant indicated that, at that time, *i.e.*, January 26, 2016, Allison lived with Ms. DeLeone and "they still talked freely about [Ms.] DeLeone's immigration status and proceedings[.]"[8] The defendant maintained that, if the jury were "allowed to hear this evidence, [it] would be able

---

[8] It is not clear from defendant's offer of proof that Jackelyn would testify that Ms. DeLeone's anger toward defendant over her immigration status was openly discussed in the Central Falls home on or after the hearing in Boston on January 26, 2016. Jackelyn previously testified that she had moved out of the home in March 2015.

to maybe use that circumstantial evidence to potentially as a motive for [Allison] to fabricate these allegations a mere[] three weeks after this event."

It is not entirely clear from the offer of proof what *exactly* Jackelyn would have testified Ms. DeLeone said to her on the day in question. However, it is logical to infer that Jackelyn's testimony would have been hearsay and therefore inadmissible, including, for example, Ms. DeLeone's conversation with her recounting what immigration officials in Boston said about Ms. DeLeone's and/or defendant's immigration case. It would not have been permissible for Jackelyn to relate what Ms. DeLeone said without it being established that the testimony fell within one of the exceptions to the hearsay rule. *See* R.I. R. Evid. 803; *Oliveira*, 961 A.2d at 314.

However, defense counsel did not allege that the testimony at issue fell within *any* of the delineated exceptions to the hearsay rule; rather, he contended that *none* of Jackelyn's testimony would be hearsay because it was not admitted for the truth of the matter asserted. In this Court's opinion, that contention was misguided. As we have just stated, it is clear to this Court that at least some portion of Jackelyn's testimony as to what Ms. DeLeone said would have been admitted for the truth of the matter asserted. As defendant failed to specify what exceptions to the hearsay rule might apply to the proffered testimony, we cannot say that the trial justice abused his discretion in excluding the entirety of

Jackelyn's testimony in this regard. Therefore, we are of the decided opinion that, as to that portion of Jackelyn's testimony that would have constituted impermissible hearsay, the trial justice acted appropriately in excluding that testimony. *See Oliveira*, 961 A.2d at 314.

Accordingly, we conclude that the trial justice did not err in excluding much of Jackelyn's proposed testimony.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.

**Justice Robinson, concurring.** While I unhesitatingly concur in the result reached at the conclusion of the majority's opinion, and while I am not without respect for the majority's quest for the best analytical path to take in dealing with this vexing case, I find myself unable to join the majority on its chosen path. It is my conviction, after long reflection, that this case is best analyzed in terms of Rule 602 of the Rhode Island Rules of Evidence.

It will be recalled that, in the course of contending that the trial justice should not permit Jackelyn Rivera to testify about the immigration proceedings or Amanda DeLeone's reaction to those proceedings, the prosecutor recited virtually verbatim the following language from Rule 602: "A witness may not testify to a

matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The prosecutor argued that, because there was no evidence that Jackelyn had any personal knowledge as to whether or not Allison knew about "any immigration proceedings or anything that was going on at that time for her grandmother * * * or the Defendant," she should not be permitted to testify about what Allison might have known about such proceedings. To my mind, it is significant that no evidence was presented that Jackelyn ever witnessed Ms. DeLeone discussing the immigration issue in Allison's presence. In fact, Jackelyn would have testified that the specific conversation she had with Ms. DeLeone, during which Ms. DeLeone indicated that she was upset with someone, took place in the car on the return trip from Boston; and she testified that the only other person present in the car was Ms. DeLeone's new husband. Furthermore, given Jackelyn's testimony indicating that she was no longer living at the home in Central Falls in which Allison lived as of the time of the immigration proceedings, there is no evidence to support an inference that she may have overheard similar conversations taking place in the home in Allison's presence.

Therefore, it is clear to me that there is insufficient evidence to show that Jackelyn had any knowledge about what Allison may or may not have known concerning the immigration proceedings. In my judgment, Rule 602 of the Rules of Evidence constituted an insuperable obstacle to such testimony by Jackelyn.

*See State v. Ranieri*, 586 A.2d 1094, 1098 (R.I. 1991) ("In deciding whether a witness is competent for purposes of Rule 602, the trial justice must determine whether a witness had a sufficient opportunity to perceive the subject matter about which he [or she] is testifying.") (citing *Hallquist v. Local 276, Plumbers and Pipefitters Union, AFL-CIO*, 843 F.2d 18, 24 (1st Cir. 1988) and 3 J. Weinstein & M. Bergen, *Weinstein's Evidence* ¶ 602[02] at 602-12 (M.B. 1988)); *see also State v. Reyes*, 984 A.2d 606, 614 n.8 (R.I. 2009); *see generally* 98 C.J.S. *Witnesses* § 93 (June 2021 Update). Accordingly, I conclude that the trial justice did not deny the defendant his constitutional right to present a full and fair defense by limiting the scope of Jackelyn's testimony.

For the reasons set forth in this opinion, I respectfully concur in the majority's conclusion, but I am of the view that a different basis for reaching that conclusion is more appropriate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Carlos Rivera. |
| **Case Number** | No. 2019-196-C.A.<br>(P1/16-2067A) |
| **Date Opinion Filed** | June 29, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |